UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| JACQUELINE SUE MARTIN, as Personal Representative for the ESTATE OF ELFRIEDE DREUTZER MARTIN,<br><br>Plaintiff,<br><br>v.<br><br>TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.; TOYOTA MOTOR MANUFACUTRING, KENTUCKY, INC.; TOYOTA MOTOR SALES, U.S.A., INC.; PETER BOULWARE MANAGEMENT CO., LLC, d/b/a PETER BOULWARE TOYOTA; and PETER BOULWARE, Individually and as an Agent/Owner of PETER BOULWARE MANAGEMENT CO., LLC d/b/a PETER BOULWARE TOYOTA,<br><br>Defendants. | 3:25-cv-09651-MGL<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

      Plaintiff Jacqueline Sue Martin, as Personal Representative for the Estate of Elfriede Dreutzer Martin, by and through her undersigned attorneys, hereby brings this Complaint against the Defendants, **TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.; TOYOTA MOTOR MANUFACTURING, KENTUCKY, INC.; TOYOTA MOTOR SALES, U.S.A., INC.; PETER BOULWARE MANAGEMENT CO., LLC, d/b/a PETER BOULWARE TOYOTA; and PETER BOULWARE, Individually and as an Agent/Owner of PETER BOULWARE MANAGEMENT CO., LLC d/b/a PETER BOULWARE TOYOTA.** Plaintiff alleges as follows:

1

## THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff Jacqueline Sue Martin is a resident of the State of South Carolina and files this Complaint as Jacqueline Sue Martin, Personal Representative for the Estate of Elfriede Dreutzer Martin.

2. By filing this Complaint, Plaintiff submits to the jurisdiction and venue of this Honorable Court.

3. Upon information and belief, Defendant Toyota Motor Engineering & Manufacturing North America, Inc. ("Defendant TMEMNA") was and is a Kentucky corporation with its principal place of business in Kentucky, which is registered to do business in the State of South Carolina and conducts substantial business in South Carolina and throughout this District. Its registered agent for service of process is CT Corporation System, located at 75 Beattie Place, Greenville, SC 29601.

4. Upon information and belief, Defendant Toyota Motor Manufacturing, Kentucky, Inc. ("Defendant TMMK") was and is a foreign corporation incorporated in the State of Kentucky, which conducts a significant amount of business throughout the United States and in the State of South Carolina, including throughout this District. Its registered agent for service of process is CT Corporation System, located at 2 Office Park Court, Suite 103, Columbia, SC 29223.

5. Upon information and belief, Defendant Toyota Motor Sales, U.S.A., Inc. ("Defendant TMS") was and is a foreign corporation incorporated in the State of California, which conducts a significant amount of business throughout the United States and in the State of South Carolina, including throughout this District. Its registered agent for service of

2

process is CT Corporation System, located at 2 Office Park Court, Suite 103, Columbia, SC 29223.

6. Upon information and belief, Defendant Peter Boulware Management Co., LLC d/b/a Peter Boulware Toyota ("Defendant PBMC") was and is a foreign limited liability company incorporated in the State of Florida, which conducts a significant amount of business throughout the southeastern United States and in the State of South Carolina, including throughout this District. Its registered agent for service of process is Peter Boulware Toyota, located at 3800 W Tennessee Street, Tallahassee, FL 32304.

7. Upon information and belief, Defendant Peter Boulware ("Defendant Boulware"), Individually and as an Agent/Owner of Peter Boulware Management Co., LLC d/b/a Peter Boulware Toyota, is a citizen and resident of the State of Florida. Defendant Boulware may be served in his individual capacity at 3800 W Tennessee Street, Tallahassee, FL 32304.

8. Jurisdiction is proper in this Court pursuant to 28 U.S.C §1332, because both the Plaintiff and the Decedent were and are citizens and residents of the State of South Carolina. The Defendants are all foreign corporate citizens, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9. Venue is proper under 28 U.S.C. §1391, because a substantial part of the events giving rise to these claims occurred within this District.

## SPECIFIC AVERMENTS

10. Defendant Toyota Motor Engineering & Manufacturing North America, Inc. ("Defendant TMEMNA) is a wholly owned subsidiary of Toyota Motor Corporation and is in the business of designing, engineering, manufacturing, and selling automobiles.

11. Defendant Toyota Motor Sales, U.S.A., Inc. ("Defendant TMS") is a wholly owned subsidiary of Toyota Motor Corporation and is in the business of marketing, distributing, and selling automobiles in the United States.

12. Defendant Toyota Motor Manufacturing, Kentucky, Inc. ("Defendant TMMK") is in the business, both on its own and through its wholly owned subsidiaries, of designing, manufacturing, testing, marketing, distributing, and selling automobiles.

13. Defendant Peter Boulware Management Co., d/b/a Peter Boulware Toyota ("Defendant PBMC"), is in the business of operating, marketing, managing, and advertising Toyota dealerships located within the southeastern United States, which offer new and used vehicles, financing, automobile rentals, and repair services.

14. Defendant Peter Boulware, Individually and as Agent/Owner of Peter Boulware Management Co., d/b/a Peter Boulware Toyota, ("Defendant Boulware") is in the business of operating, marketing, managing, and advertising Toyota dealerships located within the southeastern United States. In his capacity as the Owner of Peter Boulware Management Co., d/b/a Peter Boulware Toyota, Defendant Boulware is specifically responsible for supervising managers and sales staff, approving and implementing hiring and training procedures, establishing work duties for dealership staff, overseeing inventory management, and handling the purchase of automobiles from Toyota manufacturers.

15. Prior to November 16, 2023, Defendants designed, manufactured, tested, certified, distributed and sold and/or leased a certain 2018 Toyota RAV4 LE automobile, bearing vehicle identification number JTMZFREV9JJ749518 (hereinafter referred to as "the subject vehicle").

16. On or about December 16, 2021, Toyota, through its agents and/or authorized dealer, completed a 160-point quality assurance inspection – which included a thorough inspection of the airbag system – before Toyota, through its agents and/or authorized dealer, offered the subject vehicle for sale as a Toyota Certified Used Vehicle.

17. On or about January 28, 2022, Toyota, through its agents and/or authorized dealer, sold the subject vehicle to Elfriede Dreutzer Martin (hereinafter referred to as "Decedent") as a Toyota Certified Used Vehicle.

18. On or about January 28, 2022, Toyota, through its agents and/or authorized dealer, sold a Platinum extended warranty to Decedent, which covered the subject vehicle.

19. At the time that it was designed, manufactured, tested, certified, marketed and sold, the subject vehicle was equipped with eight standard airbags; including dual stage advanced driver and front passenger airbags; front seat-mounted side airbags; first and second row side curtain airbags; a driver's knee airbag, and a front passenger seat cushion airbag.

20. Toyota advertises the eight standard airbags that are installed in the 2018 RAV4 as a key safety feature designed to support and protect the driver's body in cases of severe collisions.

21. On or about November 16, 2023, during the late afternoon hours, Decedent was traveling on S-31 near Gaston, South Carolina in the subject vehicle.

22. Decedent suddenly lost control of the subject vehicle, causing the subject vehicle to travel across the intersection of S-31 and S-65, where it then struck an embankment and multiple trees.

23. Despite the severity of the subject vehicle's collision with the embankment and the multiple trees, the dual stage advanced driver and front passenger airbags, the driver's knee airbag, and the front passenger seat cushion airbag failed to deploy.

24. Due to the failure of the aforementioned airbags, Decedent's chest violently struck the steering wheel of the subject vehicle as the subject vehicle came to a stop between the trees.

25. At roughly 5:22 p.m. on the date of the subject incident, first responders with Lexington County EMS arrived at the scene. The responders found that the Decedent was unresponsive and hypotensive, and they proceeded to intubate the Decedent before transporting Decedent to Prisma Health Richland Memorial Hospital.

26. Once Decedent arrived at Prisma Health Richland Memorial Hospital, the Decedent dropped into cardiac arrest, and the attending physicians decided to perform an ED Thoracotomy in an attempt to resuscitate the Decedent.

27. Despite the attending physicians' attempts to resuscitate the Decedent, Decedent remained in cardiac arrest.

28. The Decedent's time of death was called at approximately 6:29 p.m. on the date of the subject incident.

29. At the time of her death, Decedent was eight-six (86) years old and otherwise in good health, with a life expectancy, in accordance with South Carolina Mortality/Life Expectancy Tables, of an additional 4.80 years.

30. An autopsy was performed on the Decedent, and it was determined that the Decedent passed due to blunt force trauma to the chest.

## FOR A FIRST CAUSE OF ACTION AS TO ALL DEFENDANTS
### (NEGLIGENCE)

31. The allegations above are incorporated herewith as if rewritten verbatim.

32. Defendants designed, engineered, manufactured, tested, marketed, distributed, inspected, repaired, and sold the subject vehicle in the ordinary course of business.

33. Defendants were negligent, negligent per se, willful, wanton, reckless, and grossly negligent in the following particulars:

    a. In selling a vehicle with a defective airbag system;

    b. In the design, engineering, manufacturing, testing, marketing, distribution, inspection, repair, and sale of the subject vehicle;

    c. In failing to properly install, inspect, and/or repair the airbag system in the subject vehicle;

    d. In failing to take the appropriate steps to redesign, reinstall, and/or otherwise repair the airbag system in the subject vehicle;

    e. In failing to provide a safer alternative;

    f. In failing to warn Plaintiff, Decedent, and the public of the risks associated with operating a vehicle with a defective airbag system;

    g. In failing to correct the faulty design and/or installation of the airbag system in the subject vehicle;

    h. In failing to take the appropriate steps to redesign and/or reinstall the defective airbag system in the subject vehicle;

    i. In continuing to sell vehicles with defective airbag systems, even after being put on notice of serious injuries resulting from said defects; and

j. Any other particulars that become known to Plaintiff and her attorneys throughout the course of discovery in this case.

34. That as a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of Defendants, as is set forth more fully above, Plaintiff and Decedent were injured, have endured pain and suffering, suffered mentally and emotionally, and have incurred fatal injuries and significant actual damages as a result of the medical care rendered to Decedent immediately prior to her passing.

35. By reason of the foregoing, Plaintiff is entitled to all economic, non-economic, and punitive damages allowed under the law in an amount to be determined by a jury at the trial of this action.

<strong><u>FOR A SECOND CAUSE OF ACTION AS TO ALL DEFENDANTS</u></strong><br><strong>(STRICT LIABILITY)</strong>

36. The allegations above are incorporated herewith as if rewritten verbatim.

37. Defendants, while in the business of selling automobiles, sold the subject vehicle in a defective condition that was unreasonably dangerous.

38. The subject vehicle was designed, manufactured, engineered, marketed, advertised, distributed, inspected, and/or repaired by Defendants.

39. At the time the subject vehicle was sold to Decedent in January of 2022, its airbag system was in a defective and unreasonably dangerous condition for users and consumers.

40. The subject vehicle reached Decedent without any substantial change in the condition in which it was sold.

41. The subject vehicle's airbag system was defective and unreasonably dangerous in design, manufacture, marketing, and warnings when it left the possession and control of the Defendants.

42. The subject vehicle was defective in design because foreseeable risks of harm could have been reduced or avoided by the adoption of reasonable alternative designs by Defendants, and the omission of the alternative designs rendered the subject vehicle not reasonably safe.

43. The subject vehicle was defective in manufacture because the vehicle departed from its intended design.

44. The subject vehicle was defective in its warnings and instructions because foreseeable risks of harm could have been reduced or avoided by the provision of reasonable instructions or warnings by the Defendants, and the omission of the instructions or warnings rendered the subject vehicle not reasonably safe.

45. The unreasonably dangerous and defective condition of the subject vehicle was a substantial factor in causing injury to Plaintiff.

46. Pursuant to §15-73-10, et al, of the South Carolina Code (1976), Defendant is strictly liable for the Plaintiff's damages, as set forth above.

47. Collisions are foreseeable and incident to the normal and expected use of a motor vehicle. Therefore, at the time the subject collision occurred, the subject vehicle was being used in a manner reasonably anticipated by Defendants.

48. As a result of the defective and unreasonably dangerous condition of the subject vehicle, Plaintiff and Decedent were injured, have endured pain and suffering, suffered mentally and emotionally, and have incurred fatal injuries and significant actual damages as a result of the medical care provided to Decedent immediately prior to her passing.

49. By reason of the foregoing, Plaintiff is entitled to all economic, non-economic, and punitive damages allowed under the law in an amount to be determined by a jury at the trial of this action.

## FOR A THIRD CAUSE OF ACTION AS TO ALL DEFENDANTS
### (BREACH OF WARRANTY)

50. The allegations above are incorporated herewith as if rewritten verbatim.

51. By selling the subject vehicle, Defendants warranted that the vehicle would be suitable for its intended purpose of driving on roadways and guaranteed that the product would not have defects in design or manufacturing, or improper or insufficient warning labels concerning the same.

52. Defendants breached express and implied warranties in the sale of the subject vehicle in the defective conditions, as described above, with respect to the airbag system.

53. That as a direct and proximate result of the breach of express and implied warranties by Defendants, as is set forth more fully above, Plaintiff and Decedent were injured, have endured pain and suffering, suffered mentally and emotionally, and have incurred fatal injuries and significant actual damages as a result of the medical care provided to Decedent immediately prior to her passing.

54. By reason of the foregoing, Plaintiff is entitled to all economic, non-economic, and punitive damages allowed under the law in an amount to be determined by a jury at the trial of this action.

## FOR A FOURTH CAUSE OF ACTION AS TO ALL DEFENDANTS
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

55. The allegations above are incorporated herewith as if rewritten verbatim.

56. Defendants negligence, gross negligence, and recklessness, as set forth more fully above, proximately caused serious physical injury and death to Decedent, and the Defendants knew or should have reasonably foreseen that their negligence, gross negligence, and reckless conduct would cause physical injury and death to passengers like the Decedent.

57. As a direct and proximate result of Defendants' negligence, gross negligence, and recklessness, Plaintiff and Decedent have suffered and continue to suffer extreme emotional distress, shock, horror, mental anguish and suffering, depression, loss of enjoyment of life, and actual damages pertaining to medical treatment rendered upon the Decedent. Plaintiff suffered and will continue to suffer severe emotional distress, which no reasonable person should be expected to experience.

58. By reason of the foregoing, Plaintiff is entitled to all economic, non-economic, and punitive damages allowed under the law in an amount to be determined by a jury at the trial of this action.

**FOR A FIFTH CAUSE OF ACTION AS TO ALL DEFENDANTS**
**(WRONGFUL DEATH, S.C. CODE ANN. § 15-51-10 ET SEQ.)**

59. The allegations above are incorporated herewith as if rewritten verbatim.

60. As set forth in greater detail above, Defendants owed a duty of care to Plaintiff and Decedent, and Defendants breached that duty of care by negligent, grossly negligent, willful, wanton, reckless and/or otherwise wrongful acts and/or omissions.

61. Defendants knew or should have known that Plaintiff and Decedent would suffer foreseeable injuries, including death, as a result of Defendants' failures to exercise ordinary care as set forth more fully above.

62. That as a direct and proximate cause of the Defendants' aforesaid conduct, Decedent lost her life, and as a result, Plaintiff has experienced pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, and deprivation of the use and comfort of Decedent.

63. By reason of the foregoing, Plaintiff is entitled to all economic, non-economic, and punitive damages allowed under the law in an amount to be determined by a jury at the trial of this action.

### FOR A SIXTH CAUSE OF ACTION AS TO ALL DEFENDANTS (SURVIVAL ACTION S.C. CODE § 15-5-90- NEGLIGENCE, GROSS NEGLIGENCE, AND NEGLIGENCE PER SE)

64. The allegations above are incorporated herewith as if rewritten verbatim.

65. That as a consequence of the events set forth in this Complaint, and as a direct and proximate cause of the negligence of the Defendants as aforesaid, Decedent sustained great conscious pain and suffering prior to her death, which injuries are compensable under South Carolina Code of Laws, Section 15-5-90.

66. That Decedent was painfully and seriously injured as a result of the negligence of the Defendants, for which a claim is hereby made by her estate and administrators for full and complete compensation for her pain and suffering.

67. That Defendants' acts and omissions, as are set forth more fully above, show willful misconduct, malice, wantonness and an entire want of care, raising a presumption of Defendants' conscious indifference to the consequences of such acts and omissions.

68. That because of Defendants' acts and omissions and the proximate harm resulting to the Estate and the Decedent, the Estate should be awarded punitive damages in an amount to be determined by the trier of fact, in order to punish and penalize the Defendants, and to deter the Defendants and others from similar actions.

69. That the Estate is entitled to judgment against the Defendants for actual, compensatory and exemplary or punitive damages for the Decedent's and the Estate's personal injuries and property damages as set forth herein in an amount that is fair, just and reasonable under the

circumstances, plus whatever costs, interest and fees that the Estate may be entitled, to be determined by a jury.

**WHEREFORE,** Plaintiff demands judgment against the Defendants for compensatory damages, both actual and punitive, in an amount as the trier of fact may find at the trial of this action on the First, Second, Third, Fourth, Fifth, and Sixth Causes of Action, together with the costs and disbursements of this action and any other relief the Court finds just and proper.

Respectfully submitted this 5th day of August, 2025.

***[SIGNATURE ON FOLLOWING PAGE]***

Respectfully Submitted,

**POULIN | WILLEY**

  */s/ Matthew Burgess*
Matthew Burgess
Fed ID. No.: 13835
Poulin Willey Anastopoulo, LLC
32 Ann Street
Charleston, SC 29403
P: (803) 222-2222
F: (843) 353-1604
E: teamburgess@poulinwilley.com

**ATTORNEYS FOR THE PLAINTIFF**

Charleston, South Carolina
Dated: August 5, 2025